UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

WILLIAM R. RILEY,
    Petitioner


     v.                                      CIVIL ACTION NO.
                                              11-10789-PBS

GARY RODEN,
    Respondent.


                  **REPORT AND RECOMMENDATION RE:
              RESPONDENT'S MOTION TO DISMISS PETITION
                     FOR WRIT OF HABEAS CORPUS
                         (DOCKET ENTRY # 4)**

                           **April 5, 2012**


**BOWLER, U.S.M.J.**

   On May 4, 2011, petitioner William R. Riley ("petitioner"), an inmate at the Massachusetts Correctional Institute in Norfolk, Massachusetts ("MCI-Norfolk") signed a petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) ("section 2254"). Docketed and filed the next day, the petition attacks petitioner's 1998 conviction for second degree murder under the third prong of malice[1] rendered in Massachusetts Superior Court

---

[1] "The elements of murder in the second degree are (1) an unlawful killing and (2) malice." Commonwealth v. Earle, 937 N.E.2d 42, 47-48 (Mass. 2010). Malice is established by proving any of one of three facts or prongs that: "(1) the defendant intended to kill the victim (the so-called first prong of malice), or (2) the defendant intended to do the victim grievous bodily harm (the second prong), or (3) in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act

(Plymouth County) ("the trial court"). Respondent Gary Roden ("respondent"), Superintendent of MCI-Norfolk, moves to dismiss the petition as untimely under 28 U.S.C. § 2244(d)(1) ("section 2244(d)") of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). (Docket Entry # 4).

An evidentiary hearing is not required because the record contains the relevant facts vis-à-vis the statute of limitations in section 2244(d). It is also inadvisable and inappropriate to conduct such a hearing where, as here, petitioner appears to attack the conviction under section 2254(d)(1). See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); see also Brown v. O'Brien, 666 F.3d 818, 822 & n.3 (1st Cir. 2012) ("[r]eview under the 'fact' prong [section 2254(d)(2)] is limited to 'the record that was before [the] state court'") (citing Cullen, 131 S.Ct. at 1400).

PROCEDURAL BACKGROUND

On November 4, 1996, a grand jury sitting in the trial court

---

(the third prong)." Commonwealth v. Sneed, 597 N.E.2d 1346, 1347 n.1 (Mass. 1992); accord Commonwealth v. Woodward, 694 N.E.2d 1277, 1286 n.14 (Mass. 1998) (same); see Commonwealth v. Earle, 937 N.E.2d at 47-48. Here, the trial judge instructed the jury only on the third prong of malice. See Commonwealth v. Riley, 741 N.E.2d 821, 823 n.3 (Mass. 2001).

2

indicted petitioner for second degree murder.  On February 9, 1998, a jury found petitioner guilty of second degree murder.  The trial court sentenced petitioner to life imprisonment.

On February 17, 1998, petitioner filed a timely notice of appeal.  On April 26, 1999, the Massachusetts Supreme Judicial Court ("SJC") allowed petitioner's application for direct review.  On January 25, 2001, the SJC affirmed the judgment.  The opinion addressed the arguments based on insufficient evidence and unconstitutional reasonable doubt instructions on the merits.  <u>Commonwealth v. Riley</u>, 741 N.E.2d at 823-826.  The 90 day period for filing a petition for certiorari review expired on April 25, 2001.

More than three years later, petitioner filed a pro se motion for a new trial under Rule 30(a), Mass. R. Crim. P., on November 15, 2004, in the trial court.  On February 7, 2005, the trial court appointed counsel for petitioner.  On May 19, 2008, petitioner's counsel filed a second motion for a new trial and a request to substitute the motion for the previously filed pro se motion for a new trial.  The trial court denied the second new trial motion on April 30, 2009.

Petitioner filed a timely appeal.  On June 30, 2010, the Massachusetts Appeals Court affirmed the denial of the new trial motion.  Petitioner thereafter filed an application for leave to obtain further appellate review ("ALOFAR") with the SJC.  The SJC

denied the ALOFAR on September 15, 2010.

Petitioner filed this petition seven and a half months later in early May 2011. The petition presents the following grounds for relief: (1) inadequate jury instructions on reasonable doubt (ground one); (2) the conviction was obtained by a "misconstruction of the elements of the crime" in violation of the Sixth Amendment (ground two); and (3) insufficient evidence of malice under the third prong (ground three). (Docket Entry # 1).

## HISTORICAL FACTS

The historical facts determined by the SJC are presumed correct. 28 U.S.C. § 2254(e)(1). They are as follows:

> The defendant lawfully owned a nine millimeter semiautomatic pistol that he kept in his Brockton apartment. In general, he knew how to handle the firearm and was familiar with its operation. Having completed a National Rifle Association safety course, the defendant was schooled in the proper way to load and unload semiautomatic weapons. The defendant generally carried his weapon, loaded, "most of the time when he went out," and he regularly attended a local gun club. In addition, the defendant disassembled and reassembled the gun "about every other day."
>
> On June 10, 1992, he invited the victim . . . to his apartment. Two boys, Douglas Bonebrake (then sixteen years old) and his half-brother Daniel Craig (then fourteen years old), lived with the defendant and witnessed the events leading up to the victim's death. At some point, the victim asked to see the defendant's gun. After unloading the gun, the defendant handed it to the victim. The victim looked at the gun for a few minutes and handed it back to the defendant. At this time, the defendant reloaded the gun, in such a way that he allowed a "live round into the chamber." Both witnesses testified that, on previous occasions, they

4

had often watched the defendant load and unload his weapon, but never in the manner he used immediately before the victim was shot.  When the victim again asked to see the gun, the defendant showed it to him and, according to Bonebrake, asked the victim, "Are you ready?"  After the victim replied "Yeah," the defendant pointed the gun at the victim's forehead, holding the barrel at a distance of about two to three inches.  Bonebrake repeatedly warned the defendant, yelling "loud enough that [the defendant] could hear," that there was still one round "in there, in the chamber."  The defendant ignored the warning and told Bonebrake to "shut up."  Craig, the other eyewitness, also knew the gun contained a live round and repeatedly told the defendant so in a "concerned voice."  Again, the defendant refused to listen, telling the boys that he knew his gun.

The defendant pulled the trigger, the boys heard a "loud bang," and the victim dropped to the floor.  After the shot, the defendant washed off the gun and ordered Bonebrake, "in an angry tone," to "tell the police department that it was an accident, [that the victim] shot himself."  If Bonebrake did not corroborate the accident story, the defendant warned Bonebrake that he would be next.  Similarly, the defendant threatened Craig that, unless he told the police the accident story, he and his family would be killed.


When the police arrived at the scene, they found the gun on the kitchen stove.  In his statement to the police, the defendant related that, after leaving his bedroom, he heard a shot and returned to find the victim lying against the bureau with a head wound.  At the station, the boys, mindful of the defendant's threats, gave separate statements explaining that the victim had shot himself.

In the summer of 1996, the defendant related a new version of an old story to a friend.  In the course of their discussion, the defendant described the incident as follows: "[The victim] had been playing around with his gun and [the defendant] didn't like it.  And [the defendant] went up to [the victim] . . . [The defendant] said that he didn't realize that he had chambered a round.  And when [the defendant] pulled the trigger a bullet was expelled [into the victim's forehead]."  A few months later, a State police sergeant reinterviewed the boys (September 14, 1996) and the defendant (September 27, 1996).  After receiving his Miranda rights, the defendant initially recalled that the victim was "fooling around" with the weapon and that his attempt to

5

> grab the gun caused the firing of the fatal shot. After further discussion, the defendant modified his version of events, stating the victim was "fooling around with the gun" and said, "I want to die anyway." The defendant picked up the handgun; the victim "brought the barrel of the gun up to his forehead"; and then, "without [his] realizing it, the gun went off."

Commonwealth v. Riley, 741 N.E.2d at 822-823.

## DISCUSSION

Respondent moves to dismiss the petition as untimely. (Docket Entry # 4). Citing Murray v. Carrier, 477 U.S. 478, 495 (1986) ("Murray"), petitioner opposes the motion on the basis of the procedural default doctrine and his actual innocence. (Docket Entry # 8).

The AEDPA contains a one year statute of limitations for federal habeas petitions. 28 U.S.C. § 2244(d)(1); Allen v. Siebert, 552 U.S. 3, 4 (2007). The one year period begins to run on "'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" Trapp v. Spencer, 479 F.3d 53, 58 (1st Cir. 2007) (quoting section 2244(d)(1)(A)). Accordingly, the one year period began to run on April 25, 2001, after the SJC concluded direct review on January 25, 2001, and the 90 day period for filing a petition for certiorari review expired. See Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) ("SJC affirmed Cordle's convictions on March 11, 1992; her convictions became

6

final ninety days thereafter").

Under section 2244(d)(2), habeas petitioners receive the benefit of a provision which tolls the one year period during the time a "properly filed" post-conviction state application for collateral review is "pending." 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005). In order to encourage exhaustion of state court remedies while still protecting the need for finality, see Duncan v. Walker, 533 U.S. 167, 178 (2001) (section 2244(d)(2) "balances the interests served by the exhaustion requirement and the limitation period"), section 2244(d)(2) excludes the time period during the pendency of a properly filed application for state collateral review with the following language:

> The time period during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Because "the word 'State' modifies both the terms 'post-conviction' and 'other collateral review,'" Lawrence v. Florida, 549 U.S. 327, 332 n.2 (2007), section 2244(d)(2) tolling does not apply to federal petitions. Duncan v. Walker, 533 U.S. at 181-182 ("an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)").

Applying these principles to the case at bar, the conviction became final on April 25, 2001, 90 days after the SJC affirmed the conviction. Because the tolling provision does not apply to a federal habeas petition, the one year period expired on April 25, 2002. The November 15, 2004 filing of the new trial motion did not restart or resurrect the expired one year limitations period. See Cordle v. Guarino, 428 F.3d at 48 n.4 ("'[s]ection 2244(d)(2) only stops, but does not reset, [the AEDPA] clock from ticking and cannot revive a time period that has already expired'"). The petition is therefore barred under the one year limitations period of section 2244(d).

Turning to equitable tolling out of an abundance of caution, the doctrine does not apply under the circumstances. Although the First Circuit recognizes the doctrine as applicable to the non-jurisdictional statute of limitations in section 2244(d), equitable tolling is the exception not the rule and is "invoked only 'sparingly.'" Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004) ("equitable tolling should be invoked only 'sparingly'"); Lattimore v. DuBois, 311 F.3d 46, 55 (1st Cir. 2002) (it is "'pellucid "that equitable tolling, if available at all, is the exception rather than the rule"'"); Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002). Resort to equitable tolling of the AEDPA's one year limitations period is "'justified only in extraordinary circumstances.'" Neverson v. Farquharson, 366 F.3d

8

at 41; Lattimore v. DuBois, 311 F.3d at 55 (same). Ordinarily, to be entitled to equitable tolling, a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007).

Petitioner fails on both fronts. Almost three years elapsed between the SJC's January 25, 2001 decision affirming the conviction and the November 15, 2004 filing of the pro se motion for a new trial. Two and a half years elapsed between the expiration of the one year limitations period on April 25, 2002, and the filing of the new trial motion on November 15, 2004. After the SJC denied the ALOFAR, petitioner waited another seven and a half months before filing this petition. In short, petitioner has not been diligently pursuing his rights to obtain federal habeas review. See, e.g., Mosso v. Matesanz, 2001 WL 1688900, at *2 (D.Mass. Dec. 5, 2001) (the petitioner's failure to file new trial motion over span of years illustrated the petitioner's lack of diligence in pursuit of his rights); Sanchez v. Hall, 2001 WL 1688901, at *2 (D.Mass. Dec. 4, 2001) ("eight month delay does not bespeak sufficient diligence to warrant federal habeas relief").

There is also no indication that any extraordinary circumstance prevented petitioner from filing this petition. Moreover, any ignorance on the part of petitioner about the law

9

does not excuse prompt and timely filing. See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999); Pearson v. North Carolina, 2001 WL 113791, at *3 (W.D.N.C. Jan. 29, 2001) (the petitioner's ignorance of proper AEDPA calculation did not warrant equitable tolling). Accordingly, equitable tolling fails to salvage the untimely filing of the petition.

Petitioner nevertheless asserts that his actual innocence of second degree murder, including his lack of malice under the third prong, justifies federal review of the constitutional claims he presents in the untimely petition.[2] "In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming." David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003). Actual innocence in a non-capital case does not override the express language of section 2244(d). See Id. (indicating that "the statutory one-year limit on filing initial habeas petitions is not mitigated by any statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch").

In the alternative, even if actual innocence provides an exception to the limitations period or provides a basis for equitable tolling, the historical facts belie the presence of

---

[2] He notes that he presented the three claims to the SJC. (Docket Entry # 4).

even a colorable claim of actual innocence. Those facts reveal that petitioner owned the nine millimeter semiautomatic pistol, carried it with him loaded "'most of the time'" and regularly attended a local gun club. Commonwealth v. Riley, 741 N.E.2d at 822. In fact, he disassembled and reassembled the gun "'about every other day.'" Id.

On June 10, 1992, he reloaded the gun, showed it to the victim, asked the victim if he was ready, to which the victim replied "'Yeah,'" and then pointed the gun at the victim's forehead with "the barrel at a distance of two to three inches." Id. After ignoring warnings of the gun being loaded from Bonebrake and Craig, petitioner pulled the trigger and the victim drooped to the floor. Petitioner then proceeded to wash the gun and threatened Bonebrake and Craig to corroborate his story of an accident to the police. Id. Thus, after being warned that the gun was loaded by two different people, petitioner, who was familiar with the gun's reassembly, regularly attended a local gun club and carried the gun with him "'most of the time,'" Id., pointed the gun directly at the victim's forehead and pulled the trigger. In such circumstances, a reasonably prudent person would know there was a plain and strong likelihood that death would follow the act of shooting the victim at such point blank range.

Petitioner's related argument that the representation by

11

trial counsel or by his counsel on state collateral review was deficient, let alone unconstitutionally deficient, is not convincing. Trial counsel and counsel on collateral review filed a number of pretrial motions. Petitioner's complaint that counsel on collateral review relied on a "third expert" to establish the ineffective assistance of trial counsel and her failure to proffer an expert on accidental shootings does not, without more, rise to the level of ineffectiveness under the Sixth Amendment.[3]

Petitioner also misconstrues the reach of procedural default under Murray. The procedural default doctrine typically applies to excuse a lack of exhaustion, see Teague v. Lane, 489 U.S. 288, 298 (1989) (citing prior Supreme Court case as "applying procedural default rule to claim that had never been raised in state court"), or a rejection of a federal constitutional claim by a state court on procedural grounds, see Brewer v. Marshall, 119 F.3d 993, 1001 (1st Cir. 1997) ("cases where defense counsel fails to make a timely objection, the state does not waive the objection, and the appellate decision rested on that ground" constitute "'classic example[s] of a procedural default'"). Even if the doctrine applied, petitioner fails in his burden to establish cause or prejudice.

---

[3] The facts likewise do not establish an extraordinary circumstance.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[4] that respondent's motion to dismiss (Docket Entry # 4) be **ALLOWED** and that the petition be **DISMISSED**.

                       /s/ Marianne B. Bowler
                       **MARIANNE B. BOWLER**
                       United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.